KNEELAND and others vs. COWLES and another.

1. GARNISHEE PROCEEDINGS. — In serving garnishee process under the attachment act, it is not necessary that the officer formally attach the rights or credits of the principal debtor in the hands of the garnishee. It is enough to serve the attachment and required notice on the garnishee for him to appear and answer.

2. ATTACHMENT — JURISDICTION. — Where in an attachment suit, the court acquired jurisdiction solely through the garnishee process founded on it, it is not necessary that the garnishee should answer before final judgment can be rendered in the attachment suit; the service of the attachment, affidavit and notice having fixed the liability of the garnishee.

3. ASSIGNMENT — PREFERENCES. — Sec. 13, p. 173 of the territorial statutes of 1839, applied only to debtors seeking a discharge from their debts in insolvency proceedings, and did not preclude a debtor from making an assignment with preference, when no discharge from his debts was sought.

4. SAME — FRAUD. — An assignment made by a debtor to one of his creditors, giving him a preference over others, with a proviso that the balance of the stock, if any, should be paid to such debtor or to his other creditors, as the said preferred creditor might see fit, is not void as a matter of law.

5. SAME. — Such an assignment is not void under the statute declaring that all deeds, transfers, etc., made in trust for the use of the person making the same, shall be void as against the creditors existing or subsequent of such person, unless the party making the same is insolvent or in failing circumstances, or actual fraud is shown.

(4 Chand., 46.)

ERROR to the Circuit Court for *Milwaukee* County.

A suit was commenced, by *Cowles* and *Ross* against *James Holden* and *De Witt Holden*, by attachment, and process of garnishment was issued against *James Kneeland, William Brown* and *Milton E. Lyman*, composing the firm of *James Kneeland & Co.*, and served with a copy of the attachment, requiring them to appear in court on the return day of the attachment, the first Monday in February, 1850, and answer, etc.

The plaintiffs obtained judgment against the defendants in

the attachment suit, on the return day of the writ, by default, for $1,045.80 damages and costs. Afterwards, at the next term of court, May 16, 1850, it was ordered, by consent of the plaintiffs and garnishees, that the court commissioner be directed to cause the garnishees to be examined before him, on a notice of one day to either party; and, on the 22d of the same month, pursuant to such order, they were so examined, disclosing that, on the 29th of November, 1848, the *Holdens* were carrying on a mercantile business at Mackford, and on that day they executed to the garnishees, *James Kneeland & Co.*, an assignment, reciting that they were indebted to them in the sum of $1,527.75, and to secure the same, "sold, transferred and delivered to said *James Kneeland & Co.* all their stock in trade, consisting of merchandise, books, accounts, notes, horses, wagons, etc. ;" that it was "understood that, after paying *James Kneeland & Co.* the said amount due them, and any amount they might see fit to put in said stock for the purpose of keeping it in a salable condition, and any expenses incurred in selling it, * * said *James Kneeland & Co.* are to pay Thomas S. Gordon, $329.54; A. H. Atkins, $217.95; Sexton, Wing & Co., $354.00, to be paid after paying the above specified amounts; the balance of the stock, if any there be, to be paid over to the said *J. & D. W. Holden pro rata*, or to their creditors, as the said *James Kneeland & Co.* may see fit; the amount of stock to be decided as follows: All goods taken at marked cost, then deduct twenty per cent. as per invoice;" that they received from the *Holdens*, under the assignment, at its date, a quantity of goods invoiced at $2,465.29, twenty per cent. being deducted; that they advanced goods to keep the stock in question in a salable condition, so that the advances and expenses of selling, with their debt, amounted to $2,708; that the goods had been disposed of, and the amount realized was $3,606.90, and that there were notes and accounts outstanding, due for sales made by them, to the amount of $1,140, and that the notes and accounts received by them, under the

assignment, in the hands of one Welch for collection, amounted to $617.00; that when they took the assignment, they understood that there were other debts due from the *Holdens* not mentioned in the assignment; that they could not say whether the *Holdens* were insolvent. Upon this disclosure, on motion of the plaintiffs, after argument of counsel for the parties, judgment was rendered against the garnishees for the amount recovered by the plaintiffs for their damages and costs in the attachment suit. The garnishees, *Kneeland, Brown* and *Lyman*, sued out a writ of error.

*Charles James* and *H. S. Orton*, for plaintiffs in error.

1. The original judgment in the attachment suit is erroneous as there was no property attached under the writ. *Martin v. Dryden*, 1 Gilman, 187, 212; 4 id., 511, 520; *Peirce v. Jackson*, 6 Mass., 242, 244; *Bedlam v. Tucker*, 1 Pick., 389; *Bagley v. White*, 4 id., 395; 11 id., 341, 519, 525. 2. When the judgment was rendered, there was no evidence that the garnishees were indebted to the defendants in attachment as they had not answered, and so the court had no jurisdiction. *Holey v. Pepper*, 5 Robinson, 119. And that such judgment was no evidence of indebtedness and did not authorize judgment against the garnishees. 4 Gilm., 511. 3. The statute in relation to garnishee proceedings is unconstitutional and void, it not providing for a trial by jury and in effect denying it. *Parsons v. Bedford*, 3 Peters, 433; 3 Story Com., 632, *et seq.* 4. The proceedings against the garnishees involved a question of intent to defraud which was a question for a jury and the answers of the garnishees did not warrant the judgment rendered against them.

*E. G. Ryan*, for defendants in error:

1. The assignment from the *Holdens* to *Kneeland & Co.*, was void as against their creditors for the preference given. R. S., 1839, 173, § 13; *Perry v. Holden*, 22 Pick., 269; *Woodward v. Marshall*, id., 468; *Fairbanks v. Haynes*, 23 Pick., 323; *Henshaw v. Sumner*, id., 446; *Hopkins v. Ray*, 1 Met., 79,

*Brown v. Foster,* 2 id., 152 ; *Riggs v. Murray,* 2 Johns. Ch., 565 ; *Burlingham v. Bell,* 16 Mass., 324 ; *Harris v. Sumner,* 2 Pick., 129 ; *Mackie v. Cairns,* 5 Cow., 584 ; *Grover v. Wakeman,* 11 Wend., 187 ; *Goodrich v. Downs,* 6 Hill., 438.

2. Garnishee process is the proper remedy for creditors of the assignors. *Hastings v. Baldwin,* 17 Mass., 552 and cases cited *supra.* 3. The question of fraud arising on the face of the written instrument was a question of law for the court and not of fact for the jury. *Harris v. Sumner,* 2 Pick., 129 ; *Goodrich v. Downs,* 6 Hill, 438. There was no issue of fact for a jury ; the garnishees having admitted enough to charge them. 4. The garnishees cannot question the judgment against their assignors and it was not necessary that they should answer before judgment could be given in the attachment suit. The statute contemplates a recovery first against the defendants in the attachment suit. The garnishees can only question the correctness of the judgment against them. On the one against the defendants in the attachment, they cannot be plaintiffs in error.

HUBBELL, C. J. Several points were decided in this case, which I shall consider in their order.

1. The service of the garnishee process was regular and valid. It is not necessary, under the present statute, to *attach* the rights or credits of the principal debtor, in the hands of a garnishee. It is enough, if the officer cannot attach property and *get possession* thereof, that he shall "serve the writ and affidavit upon such person, by giving him a copy thereof, with a written notice that he appear in court at the return of such writ." R. S., ch. 112, sec. 32. Nor was it necessary that the garnishee should answer *before* judgment against the defendants in the principal suit. It is true, the court acquired jurisdiction in the principal case solely through the garnishee proceeding. But when the garnishees had been served with the writ, affidavit and notice, their liability had been fixed; and

although the evidence of property in their hands may not have been given until after judgment against the principals, the fact existed, and that was sufficient. This is the application of an ordinary principle. The return of an officer to a writ of summons, personally served, may not be filed in court until after judgment; but if service has in fact been made, the court acquired jurisdiction, and the return may be made afterwards.

2. The assignment to the plaintiffs in error was not within the act relating to insolvent debtors. Sec. 13, p. 173, Stat. 1839. That statute applied only to debtors seeking a discharge from their debts under the assignment, and did not preclude assignments giving preferences, when no discharge was sought. It does not appear, from the authorities cited, that the courts of Massachusetts held otherwise. The case of *Perry v. Holden*, 22 Pick., 269, was an attempted assignment *under the statute*. The court held that a mortgage previously executed by the assignor, by which he had given a preference to creditors, was a part of the same transaction with the assignment, and that both were void. *Fairbanks et al. v. Haynes et al.*, 23 Pick., 323, was a similar case. But there, the mortgage being a separate transaction, and no collusion being shown with the assignees, the assignment was sustained, though it was intimated that " the debtors would lose the privilege of obtaining their discharge." *Henshaw et al. v. Sumner*, id., 446, decides simply, that certain instruments, executed by an insolvent debtor, were not assignments in trust, and hence were valid. The other cases to which this court is referred came no nearer to deciding the point claimed by the counsel of the defendants in error, to-wit: that during the existence of the statute of 1839, no assignment could be made by any debtor, securing preferences among his creditors. I leave this branch of the case by citing one clause from the opinion of Chief Justice SHAW, in *Perry v. Holden*, *supra*, showing his opinion of the design of the statute in question. In setting forth what the avowed purpose of the statute was, and after commenting upon the first principal provision,

he adds : " The other provision, founded on the same princi-
ple of equity and policy, is, *that the debtor shall have no benefit
of his discharge*, if he has in contemplation of an assignment,
made any payment, or made any conveyance of his property,
with a view to give any creditor a preference."

3. The assignment was not on its face void, as to creditors.
The provision that " the balance of the stock, if any there be,
be paid over to the said J. & D. W. Holden *pro rata*, or *to their
creditors, as the said James Kneeland & Co. may see fit*," present-
ed a question of *intent* for a jury.  It was not necessarily a pro-
vision *for the use* of the assignors.  The clause might conceal a
fraud, and it might not; but the court was bound to presume
an honest purpose and to give the instrument such a construc-
tion as would sustain it, rather than defeat it, unless the fraud-
ulent intent was made to appear, as a matter of fact.  There is
nothing in *Goodrich v. Downs*, 6 Hill, 438, which conflicts with
this view of the case.  There, an absolute and unconditional
provision was made, for the use of the assignor.  The assign-
ment declared " that if any surplus remained after paying the
debts specified, it should be paid over to the assignor, his heirs
and assigns."  By the terms of the instrument, the purpose was
clear and express ; and there was no question of intent for the
jury.  In all such cases, notwithstanding the statute (sec. 4, ch.
77) making " the question of fraudulent intent a question of
fact," and not of law, the question becomes one of construction
only, and this court would hold, as did the court of New York,
that it must be passed upon as a question of law.  But a ma-
jority of the members of this court take a still further view of
this branch of the case.  The conditional provision for the ben-
efit of the Holdens, in the assignment, is claimed to vitiate the
instrument under sec. 1, p. 163 of the Stat. of 1839, which is
copied from the statutes of New York, and is as follows : "All
deeds of gift, all conveyances, and all transfers or assignments,
verbal or written, of any goods, chattels or things in action,
made in trust, for the use of the person making the same, shall

be void, as against the creditors, existing or subsequent, of such person." If the general terms here employed are to be construed literally, they embrace solvent as well as insolvent persons; and no man would be safe, however large his means or limited his liabilities, in transferring any portion of his personal property, in trust for his own use. Every such transfer would be fraudulent and void by express statute, whatever might be the motive or the purpose to be accomplished. The plaintiffs below seemed to suppose this the proper construction of the statute, and furnished no evidence of the insolvency of the Holdens at the time of making their assignment, if such fact existed.

A majority of the court are of the opinion that the restriction must be confined to persons in fact insolvent, or in failing circumstances, unless in cases where actual fraud is shown. And it may be remarked that all the authorities adduced upon this point, present instances of assignment by failing debtors. The courts of New York have been sharp hunters of fraud; but in no discovered instance have they ventured to declare all assignments of property fraudulent and void, simply because made in trust for the use of the person making the same. And, this court holds that unless some taint of fraud lurks in the transaction; in other words, unless it appears as a matter of fact, that the transfer is made to hinder and delay creditors, or that, in some other respect, it is at variance with entire honesty and fair dealing, it may stand under the statute. Whenever the fact of insolvency on the part of the debtor appears in evidence, an assignment by him, with reservation for his own use, must be held void by the court, as necessarily calculated to injure creditors, by giving to the debtor an unreasonable control over and use of his property.

4. It is deemed unnecessary, in view of the other points decided, to express an opinion upon the general question raised by the plaintiffs in error, of the constitutionality of the statute relating to garnishee. Whether or not the garnishee himself

may be entitled in all cases to a trial by jury, it is clear that the defendants in error, who were plaintiffs below, were secured that right in this case, by R. S., ch. 112, sec. 36. And if they had designed to raise a question of fraudulent intent, and not to rely on the fraud as a question of law, they should have caused an issue to be made up, and taken a trial in the circuit court.

Such being the views of this court, the judgment of the circuit court, proceeding upon the ground of illegality of the assignment to *James Kneeland & Co.*, is erroneous. There is nothing before us to shake the validity of that assignment. But the plaintiffs below, by their garnishee proceedings, have fixed in the hands of the assignees whatever surplus may remain after paying the specified debts. For this they are entitled to judgment in that court.

The judgment of the circuit court must be reversed with costs, and the case sent back for further proceedings.