## FALKNER vs. GUILD.

### APPEAL FROM CIRCUIT COURT, DANE COUNTY.

Heard August 2, 1859.]                    [Decided February 7, 1860.

*Jurisdiction—Partition—Publication—Taxes—Title, Failure of.*

Where a party contracted for the purchase of real estate, and paid a part of the purchase money, the vendor agreeing to convey by "a warranty deed," upon the payment of the whole; but afterwards the vendee discovered that the vendor had not a perfect title, and so refused to pay the balance of the purchase money and brought an action to recover the amount paid : Held, that the action may be maintained ; and the vendee was not obliged to demand or accept a deed which would not convey to him a perfect title to the land.

Where lands were sold upon an execution in a partition suit ; and in an action involving the validity of the sale it appeared that the court did not render the preliminary judgment required by law, but did appoint commissioners, and receive and confirm their report, and enter final judgment : Held, .that though the want of the preliminary judgment was an irregularity, and sufficient cause for reversing the final judgment on a direct proceeding for that purpose ; yet it does not make the judgment void, so that it can be impeached collaterally.

Where proceedings are in a court of general jurisdiction, and jurisdiction appears by the record, even though it does not show everything necessary to regularity, yet it will be presumed, unless the contrary expressly appear; and even if irregularity. or gross error do appear, the judgment cannot be questioned collaterally. This rule applies as well to proceedings under special statutes as under the common law.

The act of partition required that a copy of the petition should be served *at least forty days* before the term at which it should be presented, on all the parties not oining in the petition, with a notice that an application would be made on

a day certain in term time; and in proceedings under this act, the notice stated that an application would be made to the judge for the appointment of commissioners to make the partition; but stated no time when, nor where, the application would be made; and therefore fails to comply with the requirements of the statute; and the notice and petition were filed in less than forty days after service, and the commissioners appointed: Held, that such a notice did not confer such jurisdiction over the parties, as would enable the court to enter a personal judgment against the defendants.

Where the act required the absent defendants to be brought into court by publication, and publication being commenced in a newspaper, and being continued for a part of the time required, the newspaper was discontinued, and the notice was then posted on the court house door for the balance of the time: Held, that such publication was not a compliance with the statute, and did not give the court jurisdiction of the absent defendants.

Where a party contracted for the purchase of real estate, and paid part of the purchase money; and brought his action to recover back the money paid, because the vendor had not title to the land sold: Held, that it was error in the court below to refuse to allow the defendant to give in evidence the tax deeds for the same land, made to himself, for the purpose of showing title in himself.

This was an action commenced by James P. Falkner against Loring Guild to recover back money paid upon a land contract, on the ground of the defendant's want of title to the land. The complaint was framed upon the following paper:

MADISON, Wisconsin, July 28, 1855.

SIR:—You have this day purchased from me lots one and two, in block No. 1, of Guild's Addition to Madison, at the price of two thousand and one hundred dollars, of which I acknowledge the receipt of one-third, $700. The remaining two-thirds to be paid by equal annual instalments of $700 each, to wit: On the twenty-eighth days of July, 1856 and 1857, with interest at 10 per cent., interest to be paid annually. I shall grant you a valid warranty deed of the above lots, on the 1st day of March, 1856, and deliver you an abstract of title. You are then to execute a bond and mortgage in the usual form for the balance remaining unpaid. You are to have the privilege to so execute the bond and mortgage as to give you the privilege of paying up the balance of principal and interest at any time thereafter before the expiration of the above mentioned time. You are then to have your bond and mortgage discharged. Yours, very respectfully,

L. GUILD.

To Mr. JAS. P. FALKNER, Madison, Wis.

The answer denied that he had failed to fulfil the contract on his part, and asserted title in himself. Upon the trial the plaintiff read the deed of the executors of T. Haight to the defendant for lots one and two of the S. E. fractional quarter of section 15, town 7, range 9, containing 68.98 acres, dated March 20, 1855; also a deed to Haight from the sheriff of Dane county for 12 acres of the fractional quarter section, also for 25 acres undivided in the same; also the judgment on which the execution had issued, and upon which the sale by the sheriff had taken place. This record consisted of the notice, which, after the title of the case, proceeded: "Take notice that application will be made to Honorable Charles Dunn, judge of the district court for the county of Iowa and Territory of Wisconsin, for the appointment of commissioners to make partition of the premises held in common by John T. Haight, Rufus Parks, Francis Hedding, Stephen Peck, Solomon Juneau, and others." This was signed by Haight, and dated at Mineral Point, January 19. This was accompanied by the petition, setting forth that Haight owned one-third of the whole tract, Parks had 12 acres, Hedding 2 acres, Peck 1 98.100 acres, and the remainder to unknown owners; and asked for a partition. Service of this notice and partition was accepted by Solomon Juneau, Parks and Hedding, and Hiram Farnsworth, on the 2d of April, 1838. On the 20th of April, 1838, the affidavit of William H. Banks was filed, and set forth: "That the notice and petition of John T. Haight was published in each number of the *Miners' Free Press*, from the 19th day of January, 1838, till the discontinuance of that paper, after which time it was posted on the door of the court house, in Mineral Point, until the 20th day of April, being for the space of three months, the time prescribed by law." Upon this affidavit the court ordered, as appears by the plaintiff's record, as follows: "It is ordered by the court that the said parties interested in the premises who are known, also such as are unknown, or whose interest or share is unknown, appear and show title to the proportions which they may claim of the premises set forth in the said petition, and to answer the said petition on or before the first day of the September term, 1838. It is further ordered by the court that publication of the above order be made in the *Iowa News*, a public newspaper printed in the county of Du Buque, in the Territory of Wisconsin, for six weeks successively, once, at least, in every week, and

that this cause be continued until the next term of this court."

By the defendant's record this order reads thus: "*This day came the said petitioner, by William H. Banks, his attorney, and it having been proven, to the satisfaction of the court, by affidavit of William H. Banks, that copies of the petition and notice herein had been duly served and published according to law,* it is is ordered by the court that," &c., as in the plaintiff's record.

On the 19th of September, 1838, the court appointed David W. Jones, Amzi Comfort, and Francis J. Dunn, as commissioners to make partition of the lands, and to report at the next term. These commissioners qualified, and reported on the ninth of April, 1839, on the 2d day of the term, assigning the several parts to each one of the parties named in the partition suit, and to Juneau and the unknown owners, the remainder of the ground, 30 acres, undivided among them. The report as given in the plaintiff's record is as follows:

"This day came into court, Francis J. Dunn, and Amzi W. Comfort, two of the commissioners appointed to make partition of the lands in the said petition mentioned, and returned into court their report in writing, made and executed in due form of law, partitioning the said lands among the parties aforesaid, according to their respective rights and interests therein, quantity and quality considered, which report so returned being examined by the court, and found to be correct, is ordered to be confirmed. Wherefore it is considered by the court that the said partition so made as aforesaid, be firm and effectual forever, and it is further considered by the court that the commissioners be allowed the sum of thirty dollars each, for their services aforesaid, to be paid by the petitioner and the defendants, according to their respective interest, and taxed in the bill of costs, and that the said John T. Haight, do have and recover of the said Rufus Parks, Francis W. Hedding, Stephen Peck, and Solomon Juneau, their proportionate share of the costs and charges by him in this behalf expended, and that he may have execution therefor." The record of the defendant omitted from this order all before "Wherefore is considered," &c., on the 29th of June, 1840, the execution was sued out against Parks for the costs, and directed to the sheriff of Dane County, who levied on the 12 acres assigned to Parks, and sold the same to Haight on the 12th of September, 1840. Another execution was also sued

out against Solomon Juneau, and the unknown owners,which was also levied by the same sheriff upon the 25 acres undivided in the lands, and also bid off by Haight. There was also an execution issued against Peck, but nothing appears to have been done with it. The plaintiff claimed that he had shown the title of the defendant to the land in question, of which the lots constituted a part, was through this record; that the defendant had built a house near the lots sold, and lived in it claiming to be the owner. That he had platted out the whole tract into lots, as an'addition to Madison.

The defendant then read a deed from John Hodgson to himself for an undivided half; also a deed from Stephen Peck to Hodgson for ten acres; a deed from Hodgson to Juneau for five acres; a deed from Juneau to A. A. Bird for five acres; a deed from Bird to Wm. D. Bird for five acres, and from Bird to the defendant for five acres. The defendant also offered a tax deed from the state, dated April 15, 1850, for the whole tract, except three acres undivided. This deed was rejected by the court.

The defendant then gave in evidence a certified copy of said judgment and proceedings in the said partition suit, a copy of which differed from that of the plaintiff as above stated. And the defendant's counsel insisted that the record of the proceedings in the partition suit showed, that that court had jurisdiction of the subject matter and the parties thereto, and that the record was conclusive, and that the judgment could not be inquired into collaterally, and requested the circuit judge to charge the jury, that the judgment was final and conclusive, and that if they found that the defendant derived his title to said premises under said judgment, it was good and valid. Which request the said circuit judge refused to grant, and then and there decided and charged the jury that said judgment record showed that the judgment was invalid, and that the judgment of partition was void.

The defendant further insisted and requested the court to charge the jury that if they found that the defendant owned " five acres undivided" in said tract, he had a right to locate the same, and having located it, that he would have good title to such quantity absolutely, and could convey a good title to the land so selected, and that if the jury should find from the evidence that the defendant had selected and taken exclusive possession of the part or lots he agreed to convey to the plaintiff, then the plaintiff could not recover, which

the judge refused to change, and decided that such was not the law.

The defendant further requested the court to charge the jury that if they found that the defendant owned an interest in such section, equal to the quantity he agreed to convey to the plaintiff, although it was undivided, yet if he should sell and convey the same by warranty deed, a court of equity, in the action of partition would, to protect the defendant from his covenants in such deed, decree said lots to the defendant, and if the jury should find that the defendant's interest in said section was equal to the quantity and value of these lots contracted to be sold to the plaintiff, the plaintiff could not recover, which the court refused to charge, and decided that such was not the law.

And the circuit judge did then and there declare and deliver his opinion to the jury, that the agreement required the defendant to execute a deed that would vest in the plaintiff a good and perfect title to said lots.

" This action is brought to recover back money paid upon a contract between the parties for the sale and conveyance of certain real estate.

" By the terms of the contract, a copy of which is set forth in the complaint, the defendant agreed to give to the plaintiff a *valid warranty deed* of the premises on the first day of March, 1856, and at the same time deliver to him an abstract of title.

" The contract itself acknowledges the payment of. $700, part of the consideration money therein mentioned on the day of its date, July 28, 1855.

" The plaintiff bases his claim to recover in this action upon the allegations that at the date of the contract the defendant was not, nor on the first day of March thereafter, was he, nor at any time subsequent thereto, has he been the owner, in fee or otherwise, of the premises mentioned in the contract, and in consequence thereof he conld not, and did not, deliver a valid warranty deed of the same to the plaintiff on the first day of March, 1856, as he was bound to do by the terms of his said contract, nor at any other time, but wholly made default.

" I charge you, as a matter of law, that by the terms of the contract the defendant was bound to give to the plaintiff a good title in fee simple to the premises, free and clear of incumbrance, and that the plaintiff was bound to receive

Falkner vs. Guild.

no other, and if you believe from the evidence that the defendant, on the first day of March, 1856, or at some time thereafter, and before the commencement of this suit, had not a good title in fee simple to the entirety of the premises mentioned in the contract, so that he could convey the same in fee simple to the plaintiff, then the plaintiff had a right to rescind the contract, and bring his suit against the defendant to recover back the money paid upon it. That before bringing his action it was not necessary for the plaintiff to demand a deed, or give any notice to the defendant. The bringing of the suit operated as a rescinding of the contract on his part, and he is entitled to recover the amount of consideration money paid, with interest from the time of payment, July 28, 1855, to this date.

" The plaintiff in this complaint having based his right to recover upon the failure of defendant's title has been confined in his proofs to such failure, and has not been permitted to give proof of incumbrances upon the premises, and it will be sufficient to defeat this action, if it appears that the defendant had a legal title in fee simple to the premises on the first day of March, 1856, or at any time thereafter, and before the commencement of this suit, so that it was in his power to comply with his contract. Such title, however, must have been a legal, and not merely an equitable title.

"I charge you, also, as matter of law, that the records introduced in evidence of the proceedings in partition in the territorial court of Iowa county, show upon their face that the court never had jurisdiction of the parties, and that they were absolutely void, and no title inures to the defendant through those proceedings. It is very doubtful whether the court got jurisdiction of any of the parties in that proceedings, but in as much as they did not get jurisdiction of all, and no valid decree could be made without acquiring jurisdiction over all, the whole proceedings were void.

The circuit judge further charged the jury as follows:

" Gentlemen of the jury: If you believe from the evidence, that at the time of making the contract, or at any time thereafter, during the progress of the negotiation about the title, the defendant claimed to trace his title to the premises through those proceedings in partition, the fact that those proceedings are void, throws such suspicion upon the defendant's title as to throw the burden of proof upon him to exhibit and establish his title; and then, and in that case,

the plaintiff is entitled to recover in this action, unless you are satisfied from the evidence that he has established the fact that he was, on the 1st day of March, 1856, or at some time thereafter, and before the commencement of this suit, the owner in fee simple of the entirety of the lots mentioned in the contract, and had good and lawful right to convey the same."

The jury found for the plaintiff, and judgment was entered accordingly; from which the defendant appealed.

*Hopkins & Firmin*, for the appellant.

*J. T. Clark*, for the respondent.


*By the Court*, PAINE, J.   The appellant agreed *to* convey to the respondent, by a " a valid warranty deed," on the first day of March, 1856, certain lots.   The respondent paid $700, part of the contract price, at the making of the contract.   The conveyance was not made, and this action was brought to recover back the money paid, the respondent alleging that at the time appointed for the conveyance, the appellant had no title *to* the lots, and taking upon himself the burden of establishing that fact.

We have no doubt of his right to maintain the action, if he could establish it.   We do not think he was bound to demand and accept a deed which would not be a compliance with the contract.   If the appellant had tendered a warranty deed, having no title, the respondent would not have been bound to receive it, but could have recovered back the money paid.   And. we think his right is the same, without going through the ceremony of a demand, if he will show that the appellant had no title, and could not have complied with the contract.

But the principal question is as to the effect to be given to the record in the partition suit, which was introduced in evidence by both parties, and on which, as appears by the appellant's affidavit, he chiefly relies to support his title.   The re-

spondent offered evidence to show that the appellant claimed title through these proceedings, and then offered the record to show a want of title, claiming that it appears on the face of the record that the proceedings were void. The appellant claimed that it supported his title, but the circuit court ruled otherwise, and held the proceedings void.

Two objections are taken to their validity; *first*, that the records show a want of jurisdiction over the parties; and *second*, that there was no judgment to sustain the sale of the interest allotted to Parks, one of the defendants, which interest was sold on an execution against him for his share of the costs of the proceedings, and through which sale a part of the title of the appellant is derived.

We think the last objection cannot be sustained. The proceedings were had under the partition act of Michigan, Laws of 1833, p. 269, which was then in force in this territory. After acquiring jurisdiction of the parties, and taking the proofs, the court was required to render a preliminary judgment, settling their various rights in the premises, and then to appoint commissioners to make partition accordingly. The latter were to report the manner of making partition, and then, on the confirmation of the report, the court was to render a final judgment, " that the partition be firm and effectual forever," and was authorized to give judgment for the costs. In the record here presented, no preliminary judgment, settling the rights of the parties, appears to have been made. But the commissioners were appointed, their report made and confirmed, and a final judgment rendered, that " the partition so made be firm and effectual forever," and for costs, &c. The want of the preliminary judgment was doubtless an irregularity, and may have been sufficient cause for reversing the judgment, on a direct proceeding for that purpose. But we do not think its absence makes the final judgment that was rendered, void, so that it can be impeached collaterally.

This final judgment has all the essentials of a judgment, and may stand by itself. It necessarily asserts that the rights of the parties were as they were allotted by the commissioners. And if the court had jurisdiction of the parties, we think it cannot be avoided collaterally.

The proceedings were in a court of general jurisdiction; and the general rule in respect to such courts is, at all events where jurisdiction appears, that though the record does not show everything necessary to regularity, it is to be presumed, unless the contrary expressly appears. And even if irregularity or gross error do appear, the judgment cannot be questioned collaterally. It is true that proceedings under special statutes have sometimes been made an exception to this general rule as to presumption, even in courts of general jurisdiction. But without entering the inextricable labyrinth of cases on the subject, we will only say that we can see, upon principle, no reason for the distinction. The general presumption in favor of the regularity of the proceeding of such courts, is founded on the character of the court itself. And that character is the same, whether it act under a special statute, or under the common law. I cannot see that a difference in the source of its authority to act, can make any rational distinction as to the presumption in favor of the regularity of its action. And if not, even though the preliminary judgment required by the statute under which these proceedings were had, should be held necessary as a foundation for the final judgment, yet the preliminary judgment may be presumed to have been rendered, though it does not appear, from the fact that the court did render the final judgment.

But we think the other objection to this record is fatal; that is, that it shows on its face that the court acquired no jurisdiction over the parties. There are some modern cases which manifest a disposition to hold proceedings with respect

to lands, such as partition, sales by administrators, &c., to be proceedings strictly *in rem*, and that notice, even though required by statute, is not essential to jurisdiction. But we do not deem it necessary to inquire, in this case, how far it is possible to sustain such a doctrine, for by the statute under which these proceedings were had, a personal judgment could be rendered against the parties, execution issued, and their property sold. And the appellant seeks to derive title through a sale on such an execution. And we are clearly of the opinion that in such a proceeding the court acquires no jurisdiction to render a judgment until the parties are notified, as the law requires, for the reason that it is a proceeding *in personam*, as well as *in rem*.

The question, to what extent jurisdiction over the parties is to be presumed, from the judgment of a court of general jurisdiction, where the record fails to show it, is not involved, for the reason that the record here shows the mode of service. And I consider it well established by authorities, some of which were referred to in the case of *Rape vs. Heaton*, decided at the last term, 9 Wis., 328, that where the manner of service appears on the record, the court, where it is presented, must look into and determine whether jurisdiction was acquired. In this record the manner of service appears, though it is perhaps worthy of remark, that there is a discrepancy between the two records in this respect. In the one offered by the plaintiff below, the order of the court finding due service, recites the affidavit upon which it was based. Whereas, in the other, the affidavit is not recited. If this affidavit were the only part of record showing the mode of service, this discrepancy might be more material than we now regard it. For, if the affidavit did not appear, the court having found due service, this finding might be sufficient to compel the presumption that the parties were served with notice as the law required, upon which however, we express no opinion. The

fact therefore that there are two copies of the same record, differing in this particular, which might be so important, gives rise to the suspicion that one or the other of them must have been prepared with direct reference to the legal effect of the presence or absence of the affidavit, showing the mode of service. If such has been the case, it was a proceeding which could not be censured with too great severity, whoever may have procured it to be done. But we do not conceive this to be so material as it otherwise might be, from the fact that both of the records show the notice that was served and the manner of service upon the parties who were residents of the territory, the affidavit only showing the mode of publication which was to reach non-residents, or those not found.

The second section of the act before referred to, provided that a copy of the petition should be served " *at least forty days* previous to the term on which it should be presented," on all the parties not joining in the petition, with a notice subscribed by the petitioner, that an application would be made to the court " *on some certain day* in term *to be specified therein*," or as soon thereafter as counsel could be heard, for the appointment of commissioners, &c. There is also a proviso, that if any of the parties were non-residents, or not found, the notice might be published for three months, once each week in a newspaper in the county where the premises were situated.

The notice in this case, of which, with the petition, the defendant Hedding accepted service on the 15th day of March, and the defendants Juneau and Parks, on the 2d day of April, 1838, simply states that an application will be made to the Hon. Charles Dunn, judge of the district court of Iowa county, for the appointment of commissioners to make partition of the premises, describing them. It states no time when, nor place where, the application will be made, and therefore utterly fails to comply with the requirements of the statute. Un-

doubtedly no slight or immaterial variance should defeat such a proceeding, if the notice conveyed to the party substantially the information he was entitled to receive. But here was an utter failure. The essential requisites of the notice were wanting. The parties received no information whatever of the time or place when and where they were to appear to protect their interests. If the notice was good at all, it must have been good for all time, and the parties notified have been bound to be in perpetual attendance upon the Hon. Charles Dunn to find out when the application was to be made. The petition which was served with the notice, is entitled of the May term, 1838, but as if in illustration of the utter insufficiency of the notice, it was filed on the 20th day of April, 1838, only eighteen days after its service on Parks and Juneau, which it also appears, was on the eleventh day of the term. We have not access to any copy of the territorial laws fixing the terms at that early day; but it appearing from the records, that there was an April term, we are safe in assuming that there was no May term. So that the only allusion to any time, if the party could be held bound by allusions in the petition to a term generally, when the law required the notice to specify a day certain, would, in this instance, have served to mislead, and induce him to wait till May, while his rights were being determined by proceedings in April. The acceptance of service by the parties cannot be construed into a waiver of anything. It was simply evidence that the papers were served, and gave them no other effect than would the sheriff's return of service.

I cannot regard proceedings in which there was such an utter failure to comply with the most material requirements of the statute, as having conferred any jurisdiction over the parties so notified.

The affidavit also shows a non-compliance with the law in respect to publication. The notice was published a part of

the requisite time in a newspaper in Iowa county; and that having been discontinued, it was afterwards posted on the court house door. If the publication was to be governed by the partition act, then the posting on the court house door would have been unauthorized.

But the appellant's counsel rely on another act, found on page 192, Mich. Laws, 1833, as authorizing the posting. This act provided that when any notice of an application to any judge of court, was required to be published in any newspaper, it should, in the counties of Brown, Iowa and Crawford, "be published by posting one copy of it on the door of the house where the circuit court was last held in the county in which such application is made," &c. It also provided that the court or judge might order a further publication in a newspaper, at his discretion.

Now, if this law was applicable to the case, and it would seem to be so, the notice should have been posted on the court house door during the whole time it was required to be published. And publishing a part of the time in a newspaper, and then posting it the balance of the time, was not a compliance with the mode provided by either statute.

We think, therefore, the circuit court was right in holding that it appeared on the face of the record, that the court acquired no jurisdiction of the parties in the partition suit, and that the judgment, for this reason, was void.

We have been pressed to sustain this record. It is said that many of the old records are imperfect, that titles have been acquired under them, and that to hold them void, would unsettle rights to property. There is great force in this argument. But I think it is allowed all its legitimate influence, in the establishment of the legal presumptions in favor of the validity of judgments. If parts of the records have been lost, they will be presumed such as were proper to support the judgment. If the record fails to show everything neces-

sary, it will be presumed, unless the contrary appears, in favor of the judgments of superior courts, including even jurisdiction over the parties. And where jurisdiction exists, the judgment is valid for all purposes, no matter how erroneous, until reversed. I think this is going as far as policy or justice requires.

In considering the argument of convenience in favor of supporting records, it should not be forgotten that the same argument has force both ways; that those whose rights are divested by judicial proceedings, are entitled to some consideration in settling the rules of law by which such proceedings are to be judged, as well as those whose rights are acquired through them. And it is for their protection that the old rule exists, than which none is better settled, that the judgment of any court assuming to dispose of the rights of parties over whom it has not jurisdiction, is a nullity.

Where it appears, therefore, as it does here, that the parties were never notified of the proceedings against them, I know of no rule or principle of law, by which I can say the judgment was valid. To say so in this case, would seem to me to be saying that there is no rule of law applicable to these questions of jurisdiction, but that the court must decide every case upon its own discretion, in view of the probable evils or benefits to result from defeating or supporting the record. And no one can examine the cases on the subject without coming to the conclusion, that such has been practically, to a great extent, the standard by which they have been determined.

For my own part, I do not desire to be subjected to such a responsibility. I am willing to labor as patiently and thoroughly as I may, to find the law applicable to the case, but I am not willing to feel that, after such examination, there is no law; but that I am to decide it in view of its effect upon the parties.

The subject is, undoubtedly, involved in much confusion and uncertainty, by the cases, but the principles by which we have determined the validity of this record, I believe to be supported by the soundest reasons, as well as decisions.

But it appears that the appellant offered in evidence certain tax deeds to Haight, through whom he claims title, which appear from the case, to include the same premises which were the subject of the particular suit. These were rejected, for what reason is not shown. We can see no reason why they were not admissible. Whether the party could have established a good title under them, is, of course, uncertain. But they were made by statute, and this court has decided them to be, *prima facie* evidence of the regularity of the proceedings in the tax collection and sale. They may have been liable to be invalidated by evidence, but we think the appellant had a right to offer them, and show title under them, if he could, and that the court erred in rejecting them.

For this error the judgment is reversed, with costs, and the cause remanded for a new trial.