## ROBERTSON vs. KINKHEAD, impleaded, etc.

LIEN OF ATTACHMENT:    *Upon what jurisdiction of court* in rem *depends.— When attachment lien begins.—Effect of erroneous return to writ.*
EQUITY :    *What constitutes cloud upon title.*

1. Under the Revised Statutes of 1849, it was the filing of the proper affidavit, the issue of a writ of attachment thereon, and the actual attachment of property of the defendant, rather than the return of the officer, that gave the court jurisdiction.
2. From the time when land was actually attached, it was subject to the attachment lien.
3. In an action (in 1856) against A. and B., non-residents, the writ commanded the officer to attach so much of the lands, etc., of the defendants, late copartners, as would be sufficient, etc. The officer levied on land of A., but returned that by virtue of said writ he had seized the land as the property of B. *Held*, that the intendment of law is, that all the interest of *either* defendant in the land was attached.

4. Said land having been sold to satisfy a judgment against both defendants, a subsequent conveyance thereof by A. is invalid as against that sale, and does not even constitute a cloud upon the title of one claiming under the sheriff's deed.
5. Such person cannot, therefore, maintain an action to have the return amended according to the fact, so as to show that the land was attached as the property of A., and to have A.'s deed adjudged null.

*Per* DIXON, C. J., dissenting in part:

1. In an attachment suit, the court can divest the defendant's title only to such property as is shown to be within its jurisdiction; and in 1856 the only mode of showing this was by the officer's return that he had seized defendant's property.
2. Attachment proceedings being in derogation of the common law, jurisdictional facts must appear from the record.
3. In a *foreign* attachment suit against a *single* defendant, where the return shows simply that property was attached, *quœre*, whether the law will intend that it was attached as the property of the defendant.
4. In an attachment suit against A. and B., where the return shows that property was levied upon as belonging to B., the law will *not* intend a levy upon A.'s interest therein.
5. Such a record of a suit in 1856 does not show jurisdiction acquired as against A.
6. If the officer did in fact levy upon A.'s interest in the land, the return may probably be amended, after judgment (on the application either of the attachment plaintiff or of the purchaser at the sheriff's sale), so as to show the fact *as against A.*
7. Such purchaser's remedy is by application in the attachment suit, for an amendment of the return; and he cannot maintain a suit in equity to have it amended, or to have A.'s subsequent deed of the land declared void.
8. An innocent purchaser of A.'s interest, intermediate the making of the return and the order of amendment, is entitled to protection; and the order should save his rights.

APPEAL from the Circuit Court for *Iowa* County.

Action against William Sturges, Rowland Ellis, Henry P. George and *J. D. Kinkhead*, to remove a cloud upon plaintiff's title to land. The defendant *Kinkhead* claimed under a deed from William Sturges, dated January 14, 1857. The plaintiff claimed under a sale upon execution, made in December, 1857, to satisfy a judgment in favor of Henry P. George against William Sturges and Rowland Ellis. The writ of attachment had been issued in the suit of George against Sturges and Ellis, and on the 16th of October, 1856, the sheriff returned the writ with an indorsement stating that by virtue thereof he had

on the previous day attached the premises here in dispute as the property of Ellis. The affidavit upon which said writ was granted, and the return thereto, will more fully appear from the opinion. The complaint in this case alleged, and the court found, that the sheriff was instructed to levy, and did in fact levy, upon said premises as the property of Sturges.

Judgment was rendered for the plaintiff, as demanded; and the defendant *Kinkhead* appealed.

*E. P. Weber* (with *S. U. Pinney*, of counsel), for appellant:

1. The return of the officer constitutes the foundation of all subsequent proceedings, and of the title which results from the attachment and subsequent sale. *Tiffany v. Glover*, 3 G. Greene (Iowa), 387. This is the doctrine which has been established and adhered to in Virginia, Kentucky and Missouri. Drake on Attach. § 238 and note. The officer making the attachment was the agent of the attaching creditors, and stated upon the record the extent of the creditors' claim. It was against the property of Ellis. 2. A court of equity has no power to remedy the erroneous or defective execution of a *statute power*, in derogation of the common law.

*Dunn & Reed* (with *Jas. M. Wight*, of counsel), for respondent.

[No printed brief.]

COLE, J. In this case the court are all agreed upon the point that there must be a reversal of the judgment, but there is a serious difference of opinion as to the reasons or ground for such reversal. The majority think that the levy under the writ of attachment was sufficient to hold the interest of William Sturges in the lands mentioned in the return of the officer; that the subsequent deed executed by him to *Kinkhead* does not even constitute a cloud upon the plain-

tiff's title; and that, consequently, this action is unnecessary for the protection of his rights.

The question material to be considered is as to the effect of the levy upon the writ of attachment, and the proper intendment to be made upon the return of the officer. The attachment suit was against non-resident defendants. The writ was in the usual form, commanding the sheriff to attach so much of the lands, etc. (not exempt from execution), of the defendants, William Sturges and Rowland Ellis, late copartners, etc., as would be sufficient to satisfy the demand of the plaintiff. Upon this writ the officer made the following return: "State of Wisconsin, County of Iowa, ss. By virtue of this writ, on the 15th day of October, A. D. 1856, I attached the southeast quarter of section ten (10) and fractions one (1), two (2), and three (3) in section ten (10), town eight (8), range four (4) east, as the property of Rowland Ellis, and on the 16th inst. I summoned George W. Cobb and Henry Lenahan, two freeholders of said county, who, being duly sworn by me, appraised said lands at the sum of nine hundred dollars. I have also left a certified copy of the writ with my return thereon, also a copy of the affidavit and appraisement of lands, with the register of deeds of said county, this 16th day of October, 1856. The within named defendants not found in this state. I further return there was no partnership property found in my county of the within named defendants, Sturges and Ellis." Signed by the officer. Now it appears that the lands above described were in fact and truth the property of William Sturges, and not the property of Rowland Ellis, as the officer states in the return. And the question presented is, whether this mistake of the officer in respect to the true ownership of the lands invalidates the attachment, so that it did not become a lien even upon the interest of Sturges, the real owner.

There are authorities which hold that it is essential

to the validity of a levy upon an attachment, and of the title derived through it, that the return should state the property attached to be the property of the defendant. *Tiffany v. Glover*, 3 G. Greene, 387; *Clay v. Neilson*, 5 Rand. 596; *Mason v. Anderson*, 3 Monroe, 293; *Repine v. McPherson*, 2 Kansas, 340; *Anderson v. Scott*, 2 Missouri, 15. And these cases seem to go upon the principle that it is the return of the officer, and not the actual attachment of property belonging to the defendant, which gives the court jurisdiction, and constitutes the foundation of the subsequent proceedings. But it seems to me that this is not a strictly accurate view of the matter, at least under the Revised Statutes of 1849. For here it is the filing of the proper affidavit, the issuing of the writ, and the actual attachment of property belonging to a non-resident defendant, which gives the court jurisdiction, rather than the return of the officer. *Kneeland v. Cowles*, 4 Chand. 46; *Williams v. Stewart*, 3 Wis. 773. Real estate is bound also, and the attachment becomes a lien upon it by the express words of the statute, from the time when it is attached. Sec. 9, chap. 112, R. S. 1849. Doubtless the return to the writ should show that property has been attached thereon, and state with convenient certainty what it is. But there need not be the same precision in the description of property in the return on an attachment that is necessary in a levy upon an execution. Drake on Attach. § 237. Hence, where one claimed the title through an attachment proceeding, in which the officer returned that he had levied on property "*supposed*" to belong to the defendant, the court held that neither the lien of the creditor nor the title of the debtor was affected by the use of this qualifying term. *Banister v. Higginson*, 15 Maine, 73. See also, *Bacon v. Leonard*, 4 Pick. 277; *Paine v. Mooreland*, 15 Ohio, 435.

In the above return the officer states that he attached the lands designated, by virtue of his writ.

The writ authorized and commanded him to attach the property of the defendants, and none other. Now, when the officer returns that he has seized property by virtue of his writ, that is, in obedience to its directions, what ought to be the legal inference from the return? It seems to me that the only natural inference is, that the property seized belonged to the defendant. And even a positive statement that the property belonged to the defendant cannot be more potent than a levy unaccompanied by such a declaration. This precise point was considered in *Johnson v. Moss*, 20 Wend. 145. And although that was a case of domestic, instead of a foreign attachment like the present one, yet I cannot see that that circumstance can make any difference in the interpretation of the return. Mr. Justice BRONSON, in that case, says: "Again it is said, that it does not appear that the levy was on the *defendant's* property. The attachment required the officer to take the defendant's property, and the constable returns that by *virtue of the attachment* he has levied on a table, etc. The fair and reasonable intendment is, that the property taken belonged to the defendant." And so it appears to me that when the officer states in his return that by virtue of the writ—which runs against both Sturges and Ellis—he attached the lands described, the fair and reasonable intendment is, that he attached the interest which either defendant had in that property. The lien acquired should be held valid to that extent. No hardship whatever can arise from such a rule. For a person about to purchase the property would see that an attachment had been issued against the real owner, and the precise real estate seized on the writ. And if, under such circumstances, he should purchase the property, he would do so at his peril, taking the risk of the lien being ultimately enforced through a judgment against the defendant. He certainly would be chargeable with

ample notice of the levy of an attachment against the real owner, and could in no wise be misled by the mistake of the officer.  I am therefore disposed to hold that the attachment was sufficient to bind the interest of Sturges in the real estate, notwithstanding this mistake.  He was one of the defendants in the attachment, and his property was seized by virtue of the process of the court against him.  And although the officer made a mistake in stating in the return that the property belonged to Ellis, yet this should not destroy the effect of the attachment in respect to Sturges.  Whatever interest he had in the lands was seized upon the writ.  And the statement that the property was that of Rowland Ellis may be rejected as a mistake of the officer, or as being repugnant to the levy and more general description in the return, as was done in *Fullam v. Stearns*, 30 Vermont, 444 to 457, and *Bacon v. Leonard, supra.*

No other objection is taken to the regularity of the proceedings.  The requisite affidavit was filed; the proper process was sued out from a competent tribunal; that process ran against the true owner, whose property was seized.  It seems to me that this gave the court complete jurisdiction over the property seized upon the writ, and authority to divest by a subsequent judgment and sale the title of William Sturges in the lands.  This being so, it follows of course that this suit was entirely unnecessary for the protection of any title founded upon the attachment proceeding. For the subsequent deed executed by Sturges gave no color of title, and constituted no cloud upon the title of the plaintiff.

It has been suggested that this view is adverse to and in direct conflict with the decision in the case of *The Bank of the Northwest v. Taylor*, 16 Wis. 610.  It does not appear to me that any such conflict exists. All the facts in the case of *The Bank of the Northwest v. Taylor*, necessary to be referred to in order to

explain my understanding of the question there de-
cided, are contained in the following extract from the
opinion of Mr. Justice PAINE in the case. He says:
" This suit was commenced against the appellant, who
was a resident of this state, and against N. B. Taylor,
who was a resident of Illinois. A writ of attachment
was issued upon an affidavit showing the non-residence
of N. B. Taylor, and alleging that the appellant had dis-
posed and was about to dispose of his property, with
intent to defraud his creditors. The appellant tra-
versed the affidavit, and on the trial of that issue the
judge found in his favor. A quantity of flour, wheat
and some other personal property had been seized on
the writ, and by the original return made by the
sheriff it was said to have been attached as the prop-
erty of C. C. Taylor, the appellant. Had the return
remained in this shape, the appellant would of course
have been entitled to an order for the property. But
the return had been amended so as to say that the
property had been attached as the property of *both*
defendants."

Now, I suppose all that was decided here was this
proposition : that where the attachment was dissolved
as to C. C. Taylor, whose property the sheriff stated
in the return he had attached upon the writ, there
being no other facts as to ownership before the court,
and nothing whatever to show that any other person
was interested in the property, such property could
not rightfully be any longer held in the custody of
the court, but should be delivered over to the real
owner, C. C. Taylor. And it might well be that
under such circumstances the attachment proceeding
against the non-resident defendant would fail because
none of his property had been seized upon the writ ;
and that, as it would be essential to the jurisdiction of
the court, in order to sustain the attachment at all,
to seize the property belonging to him, failing in that
the attachment would go down. But I really do not

see how that principle affects the question in the case before us. For here the court did acquire jurisdiction of the property belonging to William Sturges, by seizing it upon the writ of attachment issued against him. And therefore, so far as he was concerned, it was competent for the court to divest him of any title in the property seized by its process.

For these reasons the majority think the judgment of the circuit court should be reversed, and the cause remanded with directions to dismiss the complaint.

DIXON, C. J. The question in this case is as to validity of a levy upon real estate by process of foreign attachment. The proceeding was against two defendants, Sturges and Ellis, as copartners, upon a partnership debt. The lands seized belonged to Sturges, but were attached as the property of Ellis. The sheriff so certified in his return, and on the copy of the writ filed in the office of the register of deeds. After the levy and before the judgment in the attachment suit, Sturges conveyed the lands to the defendant *Kinkhead* for a valuable consideration, as appears by the deed. The plaintiff claims by virtue of the sale and sheriff's deed in the attachment suit, and commenced this action, alleging that there was a mistake in the sheriff's return to the writ of attachment; that he intended to levy and did levy upon the lands as the property of Sturges, and intended so to return. He asks to have it adjudged that there was such mistake, and to have his title confirmed, and the conveyance to *Kinkhead* set aside as a cloud. The question thus presented seems to be one well settled by authority. The proceeding is a proceeding *in rem*, and can only affect the property proceeded against. The power and jurisdiction of the court extend no farther. It can only act upon and divest the title of such property belonging to the defendant in attachment as is shown to be within its jurisdiction. At that time, 1856, the only

means appointed by law of showing this, was by the return of the sheriff or other proper officer that he had seized the property of the defendant. This return was, therefore, essential to the jurisdiction of the court, for without it, it would not appear that the court had any authority to act, or that there was anything to which its power could attach. The proceeding is a special one, in derogation of the common law; and these considerations would seem to justify what I find has been frequently. decided, that the jurisdictional facts should appear by the record, and in this case by the return of the officer, which, with respect to property of the defendants within the jurisdiction, was the sole and exclusive evidence. The return should, therefore, show that the property seized was, or was seized as, the property of the defendants named in the writ, if jurisdiction is claimed as to both of them; or if it is claimed as to Sturges or over his property, that property belonging to him was levied on *as his*. It is the return of the officers showing a seizure of the property of the defendant which gives *prima facie* jurisdiction *in rem* as to such defendant; but the return of the officer showing a seizure of the property of one defendant gives no jurisdiction as to the other. This principle is abundantly sustained by the following cases: *Mason v. Anderson*, 3 Monroe, 294; *Clay v. Neilson*, 5 Randolph, 596; *Anderson v. Scott*, 2 Missouri, 15; *Pelton v. Platner*, 13 Ohio, 209; *Tiffany v. Glover*, 3 G. Greene (Iowa), 387; *Repine v. McPherson*, 2 Kansas (Banks), 340; *Lincoln v. Strickland*, 51 Maine, 321.

I am content to abide by the authority of these cases, believing that they were correctly decided, and knowing of no decisions to the contrary. I think it very greatly for the interest of all, as well of the parties to the action as of others dealing in titles, that this rule should prevail. It gives certainty to the proceeding, and is in accordance with what I understand

to be an established principle of law, that in special and extraordinary proceedings of this nature the jurisdictional facts should appear of record. I hold, therefore, that the court acquired no jurisdiction as to Sturges or as against his property, and that the attachment created no lien upon the lands or upon his title or interest in them. As to Ellis, *prima facie* jurisdiction was shown over his title or interest, if he had had any, in the lands; but as he had none, the whole proceeding fell still-born for want of property of the defendants, or either of them, seized and returned, upon which the power of the court could operate.

But suppose I am wrong in this, and that it was the *fact* of levy upon the lands of Sturges, and not the *return* of the officer that he had so levied, which gave jurisdiction as against him; and suppose, also, that the same presumption in favor of the jurisdiction of the court in these special proceedings is to be indulged as in other cases in a court of general jurisdiction, a proposition which has sometimes been held (*Falkner v. Guild*, 10 Wis. 572, and *Rowan v. Lamb*, 4 G. Greene (Iowa), 468), and perhaps rightly; how do these help the case of the present plaintiff? It would then only follow that the return of the sheriff was amendable, and that he could amend it according to the fact so as to show a proper levy upon the lands as the property of Sturges. Perhaps as between the plaintiff in attachment and Sturges, such an amendment would have been proper. I am inclined to think it would. It would have been in furtherance of justice, and so as to correct a mistake of the officer. And if it would have been proper on the application of the plaintiff in attachment to have allowed an amendment, then it would be proper on the application of the present plaintiff to allow it, which is all that is sought by this action. The plaintiff here is asking equity to grant him relief which he could have obtained at law. He asks equity to correct a mistake which was and is correctable by motion at

law. The whole object of the action is to procure such amendment. This alone is a sufficient answer to the action, and shows that it should be dismissed.

But to return to the proposition which I was considering. The fact is, no amendment was made at the time *Kinkhead* purchased and took title from Sturges; and none has yet been made. At that time, therefore, it appeared by the record and by the copy and return filed in the register's office, that the court had no jurisdiction as to Sturges, and that there was no attachment of or lien upon his interest in or title to the lands. His title was free and unincumbered of any lien created by the attachment. Now, it is a well-settled principle in such cases, that no amendment will be allowed so as to affect the title or cut off the rights of the intervening purchaser from him. The title and rights of such purchaser will be saved by the amendment. *Whitney v. Brunette*, 15 Wis. 69 and 74, and cases cited. *Kinkhead* must, therefore, be protected. He is a purchaser in good faith and for a valuable consideration paid. At least nothing is averred in the complaint nor proved by the plaintiff to the contrary. And the rule of law in such cases is, as will be found by the authorities last above referred to, that the burden of proving *mala fides* and want of consideration rests on the attaching creditor or the party claiming under him. The attaching creditor or the party claiming under him, and in this instance the plaintiff, must aver and prove the fraud or want of consideration. In this case, if another creditor of Sturges and Ellis, or of Sturges, had subsequently issued his writ of attachment and seized the lands *as the property of* Sturges, there can be no doubt upon authority that his title would have prevailed over that of the plaintiff here, unless the plaintiff could have shown bad faith, or that nothing was in fact due to such alleged creditor; and in such case, if the plaintiff had moved an amendment of the return, it would

have been allowed only on condition of saving any rights acquired under the intermediate attachment. And what is true of an intervening attaching creditor, is also true of an intervening purchaser for value, except that the claim of the purchaser to protection is much the strongest.

And that this was the effect of the attachment and of the return as it stood at the time of the purchase, and as it stands now, I have the direct authority of this court for saying. I have the authority of this court that the levy created no lien upon the title of Sturges, and none upon the lands as against him. In *The Bank of the Northwest v. Taylor, impleaded, etc.*, 16 Wis. 609, this court had occasion to consider the effect of a return of property seized " as the property of " one of two defendants in attachment, and it was held to create no lien upon the title or interest of the other defendant in the same property. The question came up upon a motion for a return of the property, which was personal, to the defendant as whose property it had been seized or returned as seized, after a traverse of the affidavit by such defendant, on the trial of which he had been successful. But before the motion was made, the sheriff had amended his return so as to show a seizure of the property " as the property of *both* defendants." The circuit court denied the motion for a return of the property, upon the ground that after amendment of the sheriff's return it was properly detained by him as the property of the other attachment defendant; and from that order there was an appeal to this court. The other facts, as well as the conclusion of this court as to the effect of the return as originally made, or without the amendment, will sufficiently appear from the following extract from the opinion of the court by Mr. Justice PAINE, who says: " This suit was commenced against the appellant (C. C. Taylor), who was a resident of this state, and against N. B. Taylor, who was a resident of Illinois. A writ of attachment was

issued upon an affidavit, showing the non-residence of N. B. Taylor, and alleging that the appellant had disposed and was about to dispose of his property with intent to defraud his creditors. The appellant traversed the affidavit; and on the trial of that issue, the judge found in his favor. A quantity of flour, wheat and some other personal property had been seized on the writ; and by the original return made by the sheriff, it was said to have been attached as the property of C. C. Taylor, the appellant. *Had the return remained in this shape, the appellant would, of course, have been entitled to an order for the property, after finding the traverse in his favor."* This was a clear and unqualified recognition and assertion of the doctrine that upon seizure of property as that of one defendant in attachment, no lien is acquired upon it as the property of the other defendant, and that it is no seizure or attachment as against the other. In that case, if the seizure as the property of C. C. Taylor had constitute any lien upon it or right to hold it as the property of N. B. Taylor, then it would not have been as *of course*, upon the dissolution of the attachment against C. C. Taylor, that he would have been entitled to a return of the property. If, upon the sheriff's return, as it was before amended, any lien had existed upon the property as that of N. B. Taylor, or upon his title or interest in it, then, of course, C. C. Taylor would *not* have been entitled to have had it returned to him, but the sheriff would have been entitled to retain it by virtue of the attachment and lien acquired as against N. B. Taylor. This proposition is very plain, and the decision is directly in point upon the question here presented. It is directly in point that by the return here no lien existed upon the lands as the property of Sturges; and if, as in the case of Taylor, Ellis had appeared and procured the attachment to be dissolved as to him, it would have followed, as in Taylor's case, that no lien at all would thence-

forth have existed upon the lands, as the property of either defendant, unless the return had been amended according to the facts as the deputy sheriff claims them to have been. The property attached being real estate, of course no order for its return would have been required.

And the same case is also fully to the point that it is the return and not the *secret intention* of the sheriff which creates the lien; or rather that it is by the return we are to ascertain what the seizure is, and the nature and extent of the lien acquired by virtue of it. The return is sole evidence of the lien, and limits and defines its nature and extent. In this case it was a lien upon Ellis's interest in the lands, and extended only to that. It had no greater effect than if Ellis had voluntarily created a lien, or attempted to, or had given a mortgage upon the lands. At least such was the effect of the return as to all third persons—as to a purchaser. As between the immediate parties, there existed, it is true, under the power of amendment, authority to change the return, but not so as to affect the rights of third persons coming in before such authority was exercised. As to third persons, the lien was really and truly what the return represented it to be, and there exists no authority to change it to their injury. The defendant in the action, *Kinkhead*, was entitled to trust to the return as it was, and look to the lien as it there appeared to be; for as the lien there appeared, such it was in fact to him, notwithstanding the intention of the officer who executed the writ, or his mistake, unless *Kinkhead* had *actual knowledge* of such intention or mistake, in which case he might be chargeable, perhaps, on the ground of fraud, though I think it very doubtful if that would be so. The question must turn, as it seems to me, upon the actual existence and validity of the lien as shown by the return at the time of purchase, and Taylor's case very clearly shows that at that time there

existed no lien upon the lands as the property of Sturges.

And another thing is likewise very clearly shown by the same case, which is, that the return was not open to any intendment or implication by which its operation was to be enlarged, or the lien extended so as to include the title or rights of Sturges in the lands. Nothing short of an actual amendment of the return would have this effect. For, if in Taylor's case the return as originally made had by implication or otherwise created any lien upon the property as the property of his co-defendant, then of course he would not have been entitled to have had the property restored to him upon dissolution of the attachment against him. The property would have been held to answer the lien created by implication or intendment against his co-defendant.

But I have been referred to the case of *Johnson v. Moss*, 20 Wend. 145, as upholding the doctrine of intendment in a case of this kind. I clearly think it does not, and that it is not at all in conflict with Taylor's case above referred to. That was a case of *domestic* and not of *foreign* attachment, as the learned judge who wrote the opinion was very careful to note. "The attachment did not issue against the defendant as a *non-resident*, but on the ground that the defendant had *departed from the county with intent*," etc. I give the words, emphasizing them just as they are found in the opinion. The attachment was issued by a justice of the peace, and was against a *single* defendant. The constable returned that he had attached a table, or one fall of a table, but did not say it was the *defendant's* property, or levied on as his; and objection was taken to the return on that ground. In answer to the objection, Mr. Justice Bronson said: "The fair and reasonable intendment is, that the property taken belonged to the defendant. The return was, I think, sufficient." I do not doubt the correctness of the

decision.    It was most certainly a fair and reasonable intendment.    But the difference between domestic and foreign attachments is well known ; and whether that court would have applied the same doctrine to a foreign attachment I cannot say.    I only know that they did not do so, and that they had no occasion to do so.    I only know, furthermore, that no case has been found in which the same doctrine has been applied to foreign attachment.    But suppose the case had been such, that is, one of foreign attachment, I should not then be inclined to differ very much from the court.    I would rather prefer, as I have said, the rule of the authorities first above cited, which hold that the return should in all cases show property seized as the property of the defendant; but still, in the case of a sole defendant, I would not say that it might not be sufficient without those words.    It might be a fair and reasonable intendment that it was the property of such defendant, and seized as such.    But in this case there was no room for such intendment. The language of the return expressly excluded it.    It could not be intended that the lands were attached as the property of one defendant, when the return expressly stated that they were attached as the property of the other.    There can be no intendment against the plain and positive language of a sheriff's return, any more than against the plain and positive language of any other written instrument.

It is clear to my mind, therefore, that the title of *Kinkhead* cannot be disturbed upon any allegations or proofs which have been made in this case, and that the judgment of the court below should be reversed, and cause remanded with directions that it be dismissed.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.